## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **DONALD EDWARD WILLIAMS,** | ) | **CHAPTER 13** |
| | ) | |
| DEBTOR. | ) | **CASE NO. 18-51112-mgd** |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | ) | |
| | ) | **JUDGE: MARY GRACE DIEHL** |
| **DEUTSCHE BANK NATIONAL TRUST** | ) | |
| **COMPANY, AS TRUSTEE FOR SAXON** | ) | |
| **ASSET SECURITIES TRUST 2006-2** | ) | |
| **MORTGAGE LOAN ASSET BACKED** | ) | - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - |
| **CERTIFICATES, SERIES 2006-2,** | ) | **CONTESTED MATTER** |
| | ) | |
| **MOVANT.** | ) | |
| **V.** | ) | |
| | ) | |
| **DONALD EDWARD WILLIAMS,** | ) | |
| **MARY IDA TOWNSON, TRUSTEE,** | ) | |
| | ) | |
| **RESPONDENTS.** | ) | |
| | ) | |

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that Deutsche Bank National Trust Company, as Trustee for Saxon Asset Securities Trust 2006-2 Mortgage Loan Asset Backed Certificates, Series 2006-2, has filed a Motion for Relief from Automatic Stay and related papers with the Court seeking an order modifying the automatic stay.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the Motion for Relief from Automatic Stay in Courtroom 1201, 75 Ted Turner Drive, SW, Atlanta, GA 30303, at 9:30 a.m. on the 14th day of March, 2018.

Your rights may be affected by the Court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in these pleadings or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written

1

response to the pleadings with the Clerk at the address stated below, but you are not required to do so.  If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response.  Mail or deliver your response so that it is received by the Clerk at least two (2) business days before the hearing.  The address of the Clerk's office is: Clerk, United States Bankruptcy Court, 75 Ted Turner Drive, SW, Atlanta, GA 30303.  You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the motion for relief from automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty (30) days of filing the motion and agrees to a hearing on the earliest possible date. If a final decision cannot be rendered by the Court within sixty (60) days of the date of the request, Movant waives the requirement that a final decision be issued within that period. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

Dated: February 22, 2018

Respectfully submitted

WEISSMAN PC

*/S/ David S. Klein*_____
David S. Klein, Esq
Georgia Bar No. 183389
Weissman PC
One Alliance Center, 4th Floor
3500 Lenox Road
Atlanta, Georgia 30326
Tel.: 404-926-4500 / Fax: 404-926-4600
davidk@weissman.law
ATTORNEYS FOR MOVANT

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **DONALD EDWARD WILLIAMS,** | ) | **CHAPTER 13** |
| | ) | |
| DEBTOR. | ) | **CASE NO. 18-51112-mgd** |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | ) | |
| | ) | **JUDGE: MARY GRACE DIEHL** |
| **DEUTSCHE BANK NATIONAL TRUST** | ) | |
| **COMPANY, AS TRUSTEE FOR SAXON** | ) | |
| **ASSET SECURITIES TRUST 2006-2** | ) | |
| **MORTGAGE LOAN ASSET BACKED** | ) | - - - - - - - - - - - - - - - - - - - - - - - - - - - - |
| **CERTIFICATES, SERIES 2006-2,** | ) | **CONTESTED MATTER** |
| | ) | |
| MOVANT. | ) | |
| V. | ) | |
| | ) | |
| **DONALD EDWARD WILLIAMS,** | ) | |
| **MARY IDA TOWNSON, TRUSTEE,** | ) | |
| | ) | |
| RESPONDENTS. | ) | |

**MOTION FOR RELIEF FROM AUTOMATIC STAY AND**
**WAIVER OF 30-DAY HEARING REQUIREMENT OF SECTION 362(e)**

Deutsche Bank National Trust Company, as Trustee for Saxon Asset Securities Trust 2006-2 Mortgage Loan Asset Backed Certificates, Series 2006-2 ("Movant"), by and through its undersigned counsel, waives the 30-day hearing requirement of Section 362(e) and moves the Court for relief from the automatic stay for the purpose of resuming dispossessory proceedings, and respectfully shows the Court as follows:

1.

Donald Edward Williams, (hereinafter referred to as "Respondent") filed a Petition for Relief under 11 U.S.C. Chapter 13 on January 24, 2018 and is therefore subject to the jurisdiction of this Court.

3

2.

This Court has jurisdiction over this Motion pursuant to 11 U.S.C. 362.

3.

Movant is a secured creditor pursuant to a first mortgage Note and Security Deed dated 02/03/2006 in the original amount of $185,250.00. The first mortgage Promissory Note is secured by a Security Deed executed by DONALD E. WILLIAMS, dated 02/03/2006, relative to certain property known as 7057 Deshon Creek Court, Lithonia, GA 30058 (hereinafter referred to as the "Property"). The Security Deed is recorded in Deed Book/Page 18405/661, DeKalb County, Georgia Records. True and correct copies of the Security Deed and Note are attached hereto as Exhibits "A" and "B," respectively.

4.

On 09/05/2017, prior to the filing of the Respondent's bankruptcy petition, Movant foreclosed on said Property. A true and accurate copy of the Deed Under Power is attached hereto as Exhibit "C." Subsequent to the foreclosure, Movant filed a dispossessory action against Respondent on 11/02/2017. Movant's dispossessory action was scheduled for hearing on 1/22/2018. On 11/21/2017, Debtor filed a Notice of Removal and Federal Stay of Dispossessory Action. Consequently, Movant's dispossessory action was removed to Federal Court. On or about 01/11/2018, a Federal Court Judge recommended that Movant's dispossessory action be remanded to the Magistrate Court. Accordingly, Movant's dispossessory action was remanded to the Magistrate Court and schedule for hearing on 1/24/2018. Movant's dispossessory action was stayed by the Magistrate Court on 1/24/2018.

5.

Before a hearing could be held on Movant's dispossessory action, DONALD EDWARD WILLIAMS filed Chapter 13 Bankruptcy Case No. 18-51112. This bankruptcy proceeding was filed four (5) months and nineteen (19) days after the aforementioned foreclosure sale. Movant believes that the bankruptcy filing was for the sole purpose of hindering Movant's dispossessory proceedings.

6.

There is cause for granting Movant's Motion for Relief from Automatic Stay because Respondent has no equity in the Property and has asserted no equity in the Property, so that Movant does not have, and cannot be given, adequate protection of its interest in the Property.

7.

As this is a Chapter 13 bankruptcy proceeding, Respondent is seeking liquidation and discharge, rather than reorganization, and so the Property is not necessary to an effective reorganization involving the Debtor.

8.

By virtue of the 09/05/2017 foreclosure of the Property, Respondent has no interest in the Property. The filing of this Chapter 13 bankruptcy petition was done for the purpose of delaying the dispossessory action.

9.

Movant seeks relief from automatic stay to resume dispossessory proceedings against the Respondent in the Magistrate Court of DeKalb County.

WHEREFORE, Movant respectfully prays and requests of this Court as follows:

(a) that the automatic stay pursuant to Section 362(d) of the Bankruptcy Code be terminated, annulled, modified and lifted to permit Movant to pursue all remedies available under Georgia law, to recover possession of the Property; and

(b) that the property be abandoned as property of the estate;

(c) that the terms of Rule 4001(a)(3) be waived so that Movant may immediately enforce and implement the Order granting relief from the automatic stay; and

(d) that Movant be awarded its attorney's fees and costs incurred in the bringing of this Motion; and

(e) That Movant, through its agents, servicers and representatives is/are permitted to contact Debtor(s) and/or Debtor's counsel for the purpose of engaging in discussions and consideration for possible loss mitigation options, solutions and/or resolutions with regard to the underlying mortgage and note, including, but not limited to loan modification or other loss mitigation alternatives; and

(f) that Movant be granted any such other and further relief as this Court may deem just and proper.


[Intentionally left blank]

Dated: February 22, 2018

Respectfully submitted

WEISSMAN PC

***/S/ David S. Klein***_____
David S. Klein, Esq
Georgia Bar No. 183389
Weissman PC
One Alliance Center, 4th Floor
3500 Lenox Road
Atlanta, Georgia 30326
Tel.: 404-926-4500 / Fax: 404-926-4600
davidk@weissman.law
ATTORNEYS FOR MOVANT

## <u>CERTIFICATE OF SERVICE</u>

I, David S. Klein, certify that I am over the age of 18 and that on this day, I served a copy of the foregoing **NOTICE OF HEARING AND MOTION FOR RELIEF FROM AUTOMATIC STAY AND WAIVER OF 30-DAY HEARING REQUIREMENT OF SECTION 362(e)** by First Class United States Mail, with adequate postage prepaid, on the following persons or entities at the addresses stated:

Donald Edward Williams
7057 Deshon Creek Court
Lithonia, GA 30058

Mary Ida Townson
Suite 2200
191 Peachtree Street NE
Atlanta, GA 30303

Dated: February 22, 2018

*/S/ David S. Klein*
David S. Klein, Esq
Georgia Bar No. 183389
Weissman PC
One Alliance Center, 4th Floor
3500 Lenox Road
Atlanta, Georgia 30326
Tel.: 404-926-4500 / Fax: 404-926-4600
davidk@weissman.law
ATTORNEYS FOR MOVANT

**Exhibit A**

Deed Book 18405 Pg 661
Filed and Recorded Feb-09-2006 02:38pm
2006-0036906
Georgia Intangible Tax Paid $556.50
**Linda Carter**
Clerk of Superior Court
DeKalb County, Georgia



Return to:   STEWART MORTGAGE SERVICES
             ATTENTION:  TRAIL DOCS
             3910 KIRBY DRIVE, SUITE 300
             HOUSTON, TX  77098

Return to:
SHAMROCK TITLE, INC.
TEL: 404.890.7400
2200 CENTURY PKWY. STE 580
ATLANTA, GA 30345

[Space Above This Line For Recording Data]

Loan No: ██████
Borrower:  DONALD E WILLIAMS

Data ID: ██

# SECURITY DEED

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21.  Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated February 3, 2006, together with all Riders to this document.

**(B) "Borrower"** is DONALD E WILLIAMS, A MARRIED MAN.  Borrower is the grantor under this Security Instrument.

**(C) "Lender"** is SAXON MORTGAGE, INC..  Lender is a CORPORATION organized and existing under the laws of the State of VIRGINIA.  Lender's address is 4840 COX ROAD, GLEN ALLEN, VA  23060.  Lender is the grantee under this Security Instrument.

**GEORGIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Form 3011    1/01    *(Page 1 of 16 Pages)*



**Exhibit A**

Deed Book 18405 Pg 662

Loan No:  ███████                                    Data ID: ██████

(D) **"Note"** means the promissory note signed by Borrower and dated February 3, 2006.  The Note states that Borrower owes Lender **ONE HUNDRED EIGHTY-FIVE THOUSAND TWO HUNDRED FIFTY and NO/100-----Dollars** (U.S. $ 185,250.00) plus interest.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **March 1, 2036.**

(E) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(F) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | |
| ☐ 1–4 Family Rider | ☐ Biweekly Payment Rider | |
| ☒ Other(s) [specify]   Arbitration Rider | | |

(H) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) **"Escrow Items"** means those items that are described in Section 3.

(L) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**GEORGIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Form 3011   1/01   (Page 2 of 16 Pages)

**Exhibit A**

Deed Book 18405 Pg 663

Loan No: ▮▮▮▮▮                                          Data ID: ▮▮▮▮

**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the County of DE KALB:

See Schedule A attached hereto and made a part hereof.

**GEORGIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Form 3011    1/01    *(Page 3 of 16 Pages)*



Exhibit A

Deed Book 18405 Ps 664

Loan No: ███████          Data ID: ███

which currently has the address of 7057 DESHON CREEK COURT,
[Street]

LITHONIA, GEORGIA                          30058          ("Property Address"):
[City]                                     [Zip Code]

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now and hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    1.   **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
    Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**GEORGIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Form 3011   1/01   *(Page 4 of 16 Pages)*

Exhibit A

Deed Book 18405 Pg 665

Loan No: ███████        Data ID: ███

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

**GEORGIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Form 3011   1/01   *(Page 5 of 16 Pages)*

**Exhibit A**

Deed Book 18405 Pg  666

Loan No: ████████                                                    Data ID: 772

    The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

    If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

    Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

    **4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

    Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

    Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**GEORGIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Form 3011    1/01    *(Page 6 of 16 Pages)*

**Exhibit A**

Deed Book 18405 Pg 667

Loan No: ███████████      Data ID: ████

    **5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

    If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

    All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

    In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

**GEORGIA** - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3011   1/01   (Page 7 of 16 Pages)



**Exhibit A**

Deed Book 18405 Pg 668

Loan No: ▮▮▮▮▮▮▮ Data ID: ▮▮▮

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**GEORGIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Form 3011 1/01 *(Page 8 of 16 Pages)*

Deed Book 18405 Pg 669

Loan No: ███████    Data ID: ███

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**
If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument,
(b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or
rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation
or forfeiture, for enforcement of a lien which has attain priority over this Security Instrument or to
enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay
for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under
this Security Instrument, including protecting and/or assessing the value of the Property, and securing
and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited
to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing
in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights
under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the
Property includes, but is not limited to, making repairs, replacing doors and windows, draining water
from pipes, and eliminating building or other code violations or dangerous conditions. Although
Lender may take action under this Section 9, Lender does not have to do so and is not under any duty
or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions
authorized under this Section 9.
    Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower
secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date
of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower
requesting payment.
    If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the
lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge
unless Lender agrees to the merger in writing.
    **10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the
Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for
any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the
mortgage insurer that previously provided such insurance and Borrower was required to make separately
designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums
required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at
a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect,
from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance
coverage is not available, Borrower shall continue to pay to Lender the amount of the separately
designated payments that were due when the insurance coverage ceased to be in effect. Lender will
accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance.
Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in
full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve.
Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and
for the period that Lender requires) provided by an insurer selected by Lender again becomes available,
is obtained, and Lender requires separately designated payments toward the premiums for Mortgage
Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower
was required to make separately designated payments toward the premiums for Mortgage Insurance,
Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a
non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with
any written agreement between Borrower and Lender providing for such termination or until
termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation
to pay interest at the rate provided in the Note.

**GEORGIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Form 3011    1/01    (Page 9 of 16 Pages)



**Exhibit A**

Deed Book 18405 Pg 670

Loan No: ▮▮▮▮▮  Data ID: ▮▮▮

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**GEORGIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Form 3011  1/01  *(Page 10 of 16 Pages)*

**Exhibit A**

Deed Book 18405 Pg 671

Loan No: ███████   Data ID: ███

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value.  Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.  "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.  Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.  The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12.  Borrower Not Released; Forbearance By Lender Not a Waiver.**  Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower.  Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower.  Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**GEORGIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Form 3011   1/01   (Page 11 of 16 Pages)

Exhibit A

Deed Book 18405 Pg 672

Loan No: ▮▮▮▮▮▮                                                    Data ID: ▮▮▮

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**GEORGIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Form 3011    1/01    (Page 12 of 16 Pages)



**Exhibit A**

Deed Book 18405 Pg 673

Loan No: ▇▇▇▇▇▇    Data ID: ▇▇▇

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**GEORGIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Form 3011    1/01    (Page 13 of 16 Pages)



**Exhibit A**

Deed Book 18405 Pg 674

Loan No: ███████     Data ID: ███

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**GEORGIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Form 3011    1/01    (Page 14 of 16 Pages)

**Exhibit A**

Deed Book 18405 Pg 675

Loan No: ▮▮▮▮▮▮    Data ID: ▮▮▮

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

25. **Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. **Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

**GEORGIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Form 3011    1/01    (Page 15 of 16 Pages)



**Exhibit A**

Deed Book 18405 Pg 676

Loan No: ▮▮▮▮▮▮                                          Data ID: ▮▮▮

    BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

    IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered on the _3ʳᵈ_ day of
_February_ , 20_06_ , in the presence of:

_Heather Butler_ ...........................
Unofficial Witness

_John K Ireland_ ...........................

Notary Public ............ _Gwinnett_ ..................County

_Donald E Williams_ .............(Seal)
DONALD E WILLIAMS —Borrower

[Notary seal: JAN. 20 2007 GWINNETT CO. GA NOTARY PUBLIC — MY COMMISSION EXPIRES]

**GEORGIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
                                       Form 3011   1/01   *(Page 16 of 16 Pages)*



Deed Book 18405 Pg 677

Exhibit "A"

All that tract or parcel of land lying and being in Land Lot 160 of the 16th District, Dekalb County, Georgia, being Lot 62 of Deshon Creek, as per plat filed and recorded in Plat Book 108, Page 97-102, Dekalb County, Georgia Records, which recorded plat is incorporated herein for a more complete description of said property.

**Exhibit A**

Deed Book 18405 Pg 678

Loan No: ▮▮▮▮▮

Borrower:    DONALD E WILLIAMS

Data ID: 772

# ADJUSTABLE RATE RIDER
### (LIBOR Six-Month Index (As Published In The Wall Street Journal)—Rate Caps)
### (Interest Only / ARM)

THIS ADJUSTABLE RATE RIDER is made this 3rd day of February, 2006, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to SAXON MORTGAGE, INC. ("Lender") of the same date and covering the property described in the Security Instrument and located at:

7057 DESHON CREEK COURT
LITHONIA, GEORGIA   30058
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT.   THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.**   In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of **8.250 %**.   The Note also provides for changes in the interest rate and the monthly payments as follows:

**3.   PAYMENTS**

**(A) Time and Place of Payments**

I will pay interest only by making payments every month for the first **60** payments (the "Interest-Only Period") in the amount sufficient to pay the interest as it accrues.   Every month thereafter I will pay principal and interest by making payments in an amount sufficient to fully amortize the outstanding principal balance of the Note at the end of the Interest-Only Period over the remaining term of the Note. The principal and interest payment I pay may change as the interest rate I pay changes pursuant to Section 4 of this Note.

I will make monthly payments on the **first** day of each month beginning **April 1, 2006**.   I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.   Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal.   If, on **March 1, 2036**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my payments at P.O. Box 961105, Fort Worth, TX  76161-0105, or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial interest-only monthly payments will be in the amount of **U.S. $ 1,273.59**.   This amount may change.

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A)  Change Dates**

The interest rate I will pay may change on the first day of **March, 2009**, and on that day every **6th** month thereafter.   Each date on which my interest rate could change is called a "Change Date."

ADJUSTABLE RATE RIDER — LIBOR Six-Month Index (As Published In The Wall Street Journal)
© 2006 Middleberg, Riddle & Gianna                                            Form MRG  7/03      (Page 1 of 2 Pages)

**Exhibit A**

Deed Book 18405 Pg 679

Loan No: ▮▮▮▮▮▮     Data ID: ▮▮▮▮ 

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **SIX and THREE/FOURTHS** percentage points ( **6.750 %**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

Except as provided in Section 3(A) above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **11.2500 %** or less than **6.7500 %**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **ONE** percentage point (**1.00 %**) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than **14.2500 %**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

By Signing Below, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

...............................(Seal)

DONALD E WILLIAMS —Borrower

ADJUSTABLE RATE RIDER — LIBOR Six-Month Index (As Published In The Wall Street Journal)
© 2006 Middleberg, Riddle & Gianna                                    Form MRG  7/03    (Page 2 of 2 Pages)

**Exhibit A**

Deed Book 18405 Pg 680

Loan No: ▮▮▮▮▮▮
Borrower: DONALD E WILLIAMS

Data ID: ▮▮▮▮

# ARBITRATION RIDER

THIS RIDER is made this 3rd day of February, 2006, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to SAXON MORTGAGE, INC. (the "Lender") of the same date and encumbering the property described in the Security Instrument and located at:

7057 DESHON CREEK COURT
LITHONIA, GEORGIA 30058
[Property Address]

As used in this Rider the term "Lender" includes Lender's successors and assigns, the company servicing the Note on Lender's behalf (the "Servicer"), any mortgage broker involved in the origination of the mortgage loan evidenced by the Note and Security Instrument, and any settlement agent, escrow agent or closing attorney involved in the settlement of the mortgage loan evidenced by the Note and Security Instrument.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**ARBITRATION OF DISPUTES.** All disputes, claims, or controversies arising from or related to the loan evidenced by the Note (the "Loan"), including statutory claims, shall be resolved by binding arbitration, and not by court action, except as provided under "Exclusions from Arbitration" below. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act (9 U.S.C. §§ 1-14). In any arbitration hereunder, the arbitrator shall be appointed by, and the arbitration conducted pursuant to the rules of procedure of, either one of the following arbitration service providers as shall be selected by the party initiating such arbitration: National Arbitration Forum or American Arbitration Association. However, if any law applicable to the Loan requires mortgage lenders to engage, or would otherwise impose enhanced regulatory restrictions on mortgage lenders to engage, any particular arbitration service provider, the parties agree to engage such specified provider. Any arbitration hearing shall be conducted within the Federal judicial district in which the Property is located, or within such other or more limited area as required by any applicable law. The arbitrator shall set forth in the award findings of fact and conclusions of law supporting the decision, which must be based on applicable law and supported by substantial evidence presented in the proceeding. Judgment upon the award may be entered by any court of competent jurisdiction. All disputes subject to arbitration under this agreement shall be arbitrated individually, and shall not be subject to being joined or combined in any proceeding with any claims of any persons or class of persons other than Borrower or Lender.

**(12/01/2004)**                    *(Page 1 of 3 Pages)*



**Exhibit A**

Deed Book 18405 Pg 681

Loan No: ▮▮▮▮▮                                                    Data ID: ▮▮▮

**FEES OF ARBITRATOR.** In any arbitration that pertains solely to the Loan, Borrower shall not be required to pay more than $125 in initial filing fees to the arbitrator. The Lender shall pay any balance of such initial fees. In addition, the Lender shall pay all other fees and costs of the arbitration. In no event shall either party be responsible for any fees or expenses of any of the other party's attorneys, witnesses, or consultants, or any other expenses, for which such other party reasonably would have been expected to be liable had such other party initiated a suit in the courts of the jurisdiction in which the Borrower resides regarding a similar dispute.

**EXCLUSION FROM ARBITRATION.** This agreement shall not limit the right of Lender to (a) accelerate or require immediate payment in full of the secured indebtedness or exercise the other Remedies described in this Security Instrument before, during, or after any arbitration, including the right to foreclose against or sell the Property; (b) exercise the rights set forth in the Uniform Covenant labeled "Protection of Lender's Interest in the Property and Rights Under this Security Instrument" contained in this Security Instrument, or (c) exercise of the right under the terms of this Security Instrument to require payment in full of the indebtedness upon a transfer of the Property or a beneficial interest therein. Should Borrower appear in and contest any judicial proceeding initiated by Lender under this Exclusion, or initiate any judicial proceeding to challenge any action authorized by this Exclusion, without asserting any counterclaim or seeking affirmative relief against Lender, then upon request of Borrower such judicial proceedings shall be stayed or dismissed, and the matter shall proceed to arbitration in accordance with the section entitled "Arbitration of Disputes." Any dispute that could otherwise have been asserted as a counterclaim or grounds for relief in such a judicial proceeding shall be resolved solely in accordance with the section entitled "Arbitration of Disputes".

**WAIVER:** In the event your loan or an interest in your loan is transferred or sold to Freddie Mac or Fannie Mae, this Arbitration rider shall be void and cannot be reinstated by Lender or a subsequent holder or servicer of your loan. In the event of a transfer or sale to Freddie Mac or Fannie Mae, neither Lender nor any subsequent holder or servicer of your loan shall require you to submit to arbitration to resolve any dispute arising out of or relating in any way to your loan. Lender or lender's designee shall provide you with written notice in the event of a sale or transfer of your loan or an interest in your loan to Freddie Mac or Fannie Mae within sixty (60) days of such sale or transfer by Lender or an affiliate of Lender.

No provision of this agreement shall limit the right of Borrower to exercise Borrower's rights under the Uniform Covenant labeled "Borrower's Right to Reinstate After Acceleration."

**(12/01/2004)**                    *(Page 2 of 3 Pages)*



**Exhibit A**

Deed Book 18405 Pg 682

Loan No: ▮▮▮▮▮                                                    Data ID: ▮▮▮

**NOTICE:** BY SIGNING THIS ARBITRATION RIDER YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS DESCRIBED IN THE "ARBITRATION OF DISPUTES" SECTION ABOVE DECIDED EXCLUSIVELY BY ARBITRATION, AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT HAVE TO LITIGATE DISPUTES IN A COURT OR JURY TRIAL.  DISCOVERY IN ARBITRATION PROCEEDINGS MAY BE LIMITED BY THE RULES OF PROCEDURE OF THE SELECTED ARBITRATION SERVICE PROVIDER.

THIS IS A VOLUNTARY ARBITRATION AGREEMENT.  IF YOU DECLINE TO SIGN THIS ARBITRATION AGREEMENT, LENDER WILL NOT REFUSE TO COMPLETE THE LOAN TRANSACTION BECAUSE OF YOUR DECISION.

BY SIGNING BELOW, Borrower accepts and agrees to the provisions contained in this Rider.



..................................................................................(Seal)
DONALD E WILLIAMS —Borrower

**(12/01/2004)**          *(Page 3 of 3 Pages)*

# ADJUSTABLE RATE NOTE
### (LIBOR Six-Month Index (As Published In The Wall Street Journal)—Rate Caps)
### (Interest Only / ARM)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE
AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE
CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

February 3, 2006                              LITHONIA                              GEORGIA
[Date]                                         [City]                                 [State]
                                     7057 DESHON CREEK COURT
                                      LITHONIA, GEORGIA  30058
                                         [Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 185,250.00 (this amount is called "Principal"),
plus interest, to the order of Lender. Lender is **SAXON MORTGAGE, INC.**. I will make all payments under this
Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who
is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest
at a yearly rate of **8.250** %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and
after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay interest only by making payments every month for the first **60** payments (the "Interest-Only Period")
in the amount sufficient to pay the interest as it accrues. Every month thereafter I will pay principal and interest
by making payments in an amount sufficient to fully amortize the outstanding principal balance of the Note at the
end of the Interest-Only Period over the remaining term of the Note. The principal and interest payment I pay may
change as the interest rate I pay changes pursuant to Section 4 of this Note.

I will make monthly payments on the **first** day of each month beginning **April 1, 2006**. I will make these
payments every month until I have paid all of the principal and interest and any other charges described below that
I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied
to interest before principal. If, on **March 1, 2036**, I still owe amounts under this Note, I will pay those amounts in
full on that date, which is called the "Maturity Date."

I will make my payments at P.O. Box 961105, Fort Worth, TX  76161-0105, or at a different place if required
by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial interest-only monthly payments will be in the amount of U.S. $ **1,273.59**. This amount may
change.

MULTISTATE  ADJUSTABLE RATE NOTE - LIBOR Six-Month Index (As Published In The Wall Street Journal)
© 2006 Middleberg, Riddle & Gianna                                          Form MRG  7/03     (Page 1 of 5 Pages)

INITIALS: _DW_ _____

Loan No: ▮▮▮▮▮▮                                                    Data ID: ▮▮▮

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A)  Change Dates**

The interest rate I will pay may change on the first day of **March, 2009,** and on that day every **6**th month thereafter.  Each date on which my interest rate could change is called a "Change Date."

**(B)  The Index**

Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal.  The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.  The Note Holder will give me notice of this choice.

**(C)  Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **SIX and THREE/FOURTHS** percentage points (**6.750** %) to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

Except as provided in Section 3(A) above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly payment.

**(D)  Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **11.2500** % or less than **6.7500** %.  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **ONE**  percentage point (**1.00** %) from the rate of interest I have been paying for the preceding **6** months.  My interest rate will never be greater than **14.2500** %.

**(E)  Effective Date of Changes**

My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)  Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change.  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

INITIALS: ▮▮

Exhibit B

Loan No: ■■■■■■                                                                    Data ID: ■■■

## 5.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge.  The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note.  If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes.  If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest.  If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment.  However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me.  The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me.  If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)  Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be **5.00 %** of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter.  I will pay this late charge promptly but only once on each late payment.

### (B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount.  That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees.

INITIALS: _____

Loan No: ▮▮▮▮▮▮    Exhibit B    Data ID: ▮▮▮▮▮

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.



INITIALS: _____  _____

Loan No: ███████   **Exhibit B**   Data ID: ███

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

.................................................................(Seal)
DONALD E WILLIAMS —Borrower

*[Sign Original Only]*

Without Recourse
Pay to the Order of

Saxon Mortgage, Inc.

By:
Amy Shook, Assistant Vice-President

MULTISTATE ADJUSTABLE RATE NOTE - LIBOR Six-Month Index (As Published In The Wall Street Journal)
© 2006 Middleberg, Riddle & Gianna                                Form MRG  7/03    *(Page 5 of 5 Pages)*

**Exhibit C**

2017148723    DEED BOOK **26532** Pg **281**

Real Estate Transfer Tax $0.00

Filed and Recorded:
10/9/2017 11:06:06 AM
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

Please return to:
Weissman PC
Default Services
One Alliance Center, 4th Floor
3500 Lenox Road
Atlanta, GA 30326
Our File: 017237-009317

Note to Clerk: Please Cross Index to that
certain Security Deed recorded in Deed
Book 18405, Page 661, DeKalb County,
Georgia Records

STATE OF _Florida_

COUNTY OF _Palm Beach_

### DEED UNDER POWER

THIS INDENTURE, effective September 5, 2017, by Donald E. Williams (hereinafter collectively referred to as "Borrower"), acting through Borrower's duly appointed attorney-in-fact, Deutsche Bank National Trust Company, as Trustee for Saxon Asset Securities Trust 2006-2 Mortgage Loan Asset Backed Certificates, Series 2006-2 (hereinafter referred to as "Grantor"), as Party of the First Part, and Deutsche Bank National Trust Company, as Trustee for Saxon Asset Securities Trust 2006-2 Mortgage Loan Asset Backed Certificates, Series 2006-2, as Party of the Second Part:

### W I T N E S S E T H :

WHEREAS, Borrower executed and delivered that certain Security Deed given to SAXON MORTGAGE, INC., dated February 3, 2006, recorded in Deed Book 18405, Page 661, DeKalb County, Georgia Records, as last transferred to Deutsche Bank National Trust Company, as Trustee for Saxon Asset Securities Trust 2006-2 Mortgage Loan Asset Backed Certificates, Series 2006-2 by assignment recorded in Deed Book 24227, Page 495, DeKalb County, Georgia Records, conveying the after-described property to secure a Note dated Third day of February, Two Thousand Six in the original principal amount of One Hundred Eighty-Five Thousand Two Hundred Fifty and 00/100 DOLLARS ($185,250.00); and

**Exhibit C**

DEED BOOK 26532 Pg 282

WHEREAS, default under said Note occurred, and by reason of said default, Grantor elected, pursuant to the terms of the Security Deed and Note, to declare the entire principal and interest immediately due and payable; and

WHEREAS, said entire indebtedness still being in default, Grantor on behalf of Borrower, and according to the terms of said Security Deed, did advertise said property for sale once a week for 4 weeks immediately preceding said sale in a newspaper in DeKalb County, Georgia, wherein the Sheriff carried his advertisements, namely the Champion Newspaper; and

WHEREAS, notice was given in compliance with Georgia Laws 1981, Volume I, Page 834, codified as O.C.G.A. Section 44-14-162.2 and Section 44-14-162.4. The notice so required was rendered by mailing a copy of the Notice of Sale submitted to the publisher to the "Debtor" (as that term is defined in O.C.G.A. Section 44-14-162.1) at least thirty days prior to the foreclosure sale date on September 5, 2017; and

WHEREAS, Grantor, as attorney-in-fact for Borrower, did expose said property for sale to the highest bidder for cash on the first Tuesday in September 2017 within the legal hours of sale at the usual place for conducting Sheriff's sales in DeKalb County before the Courthouse door, and offered said property for sale at public outcry to the highest bidder for cash, when and where the aforesaid Party of the Second Part bid $160,650.00, which was the highest and best bid at said sale; and

WHEREAS, the said property was knocked off to the Party of the Second Part for the aforementioned sum of money in cash.

NOW THEREFORE, in consideration of the premises and said sum of money and by virtue of and in the exercise of the power of sale contained in the Security Deed, the Party of the First Part has bargained, sold, granted and conveyed, and by these presents does hereby bargain, sell, grant and convey to the Party of the Second Part, said party's representatives, heirs, successors and assigns, the following described property:

**See Exhibit "A"**

TOGETHER WITH all and singular the rights, members and appurtenances thereto appertaining; also all the estate, right, title, interest, claim or demand of the Party of the First Part, or said Party's representatives, heirs, successors and assigns, legal, equitable or otherwise, whatsoever, in and to the same.

THIS CONVEYANCE IS SUBJECT TO any outstanding ad valorem taxes (including taxes which are a lien, but not yet due and payable), any matters which might be disclosed by an accurate survey and inspection of the property, and any assessments, liens, encumbrances, zoning ordinances, restrictions, covenants, and matters of record superior to the Security Deed.

DEED BOOK 26532 Ps 283

TO HAVE AND TO HOLD the said property and every part thereof unto the said Party of the Second Part, and said party's representatives, heirs, successors and assigns, to said Party's own proper use, benefit and behoof in FEE SIMPLE, in as full and ample a manner as the said Party of the First Part or said Party's representatives, heirs, successors and assigns, did hold and enjoy the same.

IN WITNESS WHEREOF, Grantor as Agent and Attorney-In-Fact for Borrowers have hereunto affixed Grantor's hand and seal effective the day and year first above written.

**DONALD E. WILLIAMS**

Acting through his/her/their duly appointed attorney-in-fact Deutsche Bank National Trust Company, as Trustee for Saxon Asset Securities Trust 2006-2 Mortgage Loan Asset Backed Certificates, Series 2006-2 by and through its duly appointed attorney-in-fact, OCWEN LOAN SERVICING, LLC.

By: _____  9-27-17

Print Name: **Angel Ramos**

Title: Contract Management Coordinator

By: _____  9/27/17

Print Name: **Evette Morales**

Title: Contract Management Coordinator

Signed, sealed and delivered in the presence of:

Witness: _____
**Douglas Townsend**

Notary Witness:
STATE OF FLORIDA
COUNTY OF PALM BEACH

On 9/27/17, before me, **Marlene Saunders** a Notary Public in and for Palm Beach in the State of Florida, personally appeared **Angel Ramos** and **Evette Morales** (personally known to me or proved to me on the basis of satisfactory evidence), and executed the foregoing instrument in his/her/their authorized capacity in my presence.

WITNESS my hand and official seal.

_____
Signature of Notary Public
Name of Notary Public _____ **Marlene Saunders**

Notary Seal
Commission Expiration date: _____

Notary Public State of Florida
Marlene Saunders
My Commission FF 923278
Expires 10/01/2019

Our File# 017237-009317

**Exhibit C**

DEED BOOK 26532 Pg 284

**Exhibit A**

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 160 OF THE 16TH
DISTRICT, DEKALB COUNTY, GEORGIA, BEING LOT 62 OF DESHON CREEK, AS PER PLAT FILED
AND RECORDED IN PLAT BOOK 108, PAGE 97-102, DEKALB COUNTY, GEORGIA RECORDS, WHICH
RECORDED PLAT IS INCORPORATED HEREIN FOR A MORE COMPLETE DESCRIPTION OF SAID
PROPERTY.

Exhibit C

DEED BOOK 26532 Pᵍ 285

AFTER RECORDING RETURN DOCUMENT TO:
OCWEN LOAN SERVICING, LLC
5720 PREMIER PARK DR. BLDG 3
WEST PALM BEACH, FL 33407
ATTN: RECORD SERVICES

    LIMITED POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, that Deutsche Bank National Trust Company, a national banking association organized and existing under the laws of the United States, and having its usual place of business at 1761 East St. Andrew Place, Santa Ana, California, 92705, as Trustee (the "Trustee") for the Trusts identified on Exhibit "A" pursuant to the (i) Pooling and Servicing Agreements referenced in Exhibit "A" (the "Pooling and Servicing Agreements") by and among Saxon Asset Securities Company, as Depositor, Saxon Mortgage, Inc., as Master Servicer, Saxon Mortgage Services, Inc. ("Saxon"), as Servicer, and Deutsche Bank National Trust Company as Trustee, and (ii) Assignment and Assumption Agreement dated as of May 25, 2012 by and between Saxon, as Assignor, and Ocwen Loan Servicing LLC ("Ocwen"), as Assignee (the "Assignment and Assumption Agreement" and, together with the Pooling and Servicing Agreements, the "Agreements") hereby constitutes and appoints Ocwen, in its capacity as servicer (the "Servicer"), by and through the Servicer's officers, the Trustee's true and lawful Attorney-in-Fact, in the Trustee's name, place and stead and for the Trustee's benefit, in connection with all mortgage loans serviced by the Servicer pursuant to the Agreements solely for the purpose of performing such acts and executing such documents in the name of the Trustee necessary and appropriate to effectuate the following enumerated transactions in respect of any of the mortgages or deeds of trust (the "Mortgages" and the "Deeds of Trust" respectively) and promissory notes secured thereby (the "Mortgage Notes") for which the undersigned is acting as Trustee for various certificateholders (whether the undersigned is named therein as mortgagee or beneficiary or has become mortgagee by virtue of endorsement of the Mortgage Note secured by any such Mortgage or Deed of Trust) and for which Ocwen is acting as the Servicer.

This Appointment shall apply only to the following enumerated transactions and nothing herein or in the Agreement shall be construed to the contrary:

    1.    The modification or re-recording of a Mortgage or Deed of Trust, where said modification or re-recording is solely for the purpose of correcting the Mortgage or Deed of Trust to conform same to the original intent of the parties thereto or to correct title errors discovered after such title insurance was issued; provided that (i) said modification or re-recording, in either instance, does not adversely affect the lien of the Mortgage or Deed of Trust as insured and (ii) otherwise conforms to the provisions of the Agreement.

Exhibit C

DEED BOOK 26532 Pg 286

2.     The subordination of the lien of a Mortgage or Deed of Trust to an easement in favor of a public utility company of a government agency or unit with powers of eminent domain; this section shall include, without limitation, the execution of partial satisfactions/releases, partial reconveyances or the execution or requests to trustees to accomplish same.

3.     The conveyance of the properties to the mortgage insurer, or the closing of the title to the property to be acquired as real estate owned, or conveyance of title to real estate owned.

4.     The completion of loan assumption agreements.

5.     The full satisfaction/release of a Mortgage or Deed of Trust or full conveyance upon payment and discharge of all sums secured thereby, including, without limitation, cancellation of the related Mortgage Note.

6.     The assignment of any Mortgage or Deed of Trust and the related Mortgage Note, in connection with the repurchase of the mortgage loan secured and evidenced thereby.

7.     The full assignment of a Mortgage or Deed of Trust upon payment and discharge of all sums secured thereby in conjunction with the refinancing thereof, including, without limitation, the assignment of the related Mortgage Note.

8.     The full enforcement of and preservation of the Trustee's interests in the Mortgage Notes, Mortgages or Deeds of Trust, and in the proceeds thereof, by way of, including but not limited to, foreclosure, the taking of a deed in lieu of foreclosure, or the completion of judicial or non-judicial foreclosure or the termination, cancellation or rescission of any such foreclosure, the initiation, prosecution and completion of eviction actions or proceedings with respect to, or the termination, cancellation or rescission of any such eviction actions or proceedings, and the pursuit of title insurance, hazard insurance and claims in bankruptcy proceedings, including, without limitation, any and all of the following acts:

    a.     the substitution of trustee(s) serving under a Deed of Trust, in accordance with state law and the Deed of Trust;

    b.     the preparation and issuance of statements of breach or non-performance;

    c.     the preparation and filing of notices of default and/or notices of sale;

    d.     the cancellation/rescission of notices of default and/or notices of sale;

    e.     the taking of deed in lieu of foreclosure;

2

Exhibit C

DEED BOOK 26532 Pg 287

     f.    the filing, prosecution and defense of claims, and to appear on behalf of the Trustee, in bankruptcy cases affecting Mortgage Notes, Mortgages or Deeds of Trust;

     g.    the preparation and service of notices to quit and all other documents necessary to initiate, prosecute and complete eviction actions or proceedings;

     h.    the tendering, filing, prosecution and defense, as applicable, of hazard insurance and title insurance claims, including but not limited to appearing on behalf of the Trustee in quiet title actions; and

     i.    the preparation and execution of such other documents and performance of such other actions as may be necessary under the terms of the Mortgage, Deed of Trust or state law to expeditiously complete said transactions in paragraphs 8.a. through 8.h. above.

9.    With respect to the sale of property acquired through a foreclosure or deed-in lieu of foreclosure, including, without limitation, the execution of the following documentation:

     a.    listing agreements;
     b.    purchase and sale agreements;
     c.    grant/warranty/quit claim deeds or any other deed causing the transfer of title of the property to a party contracted to purchase same;
     d.    escrow instructions; and
     e.    any and all documents necessary to effect the transfer of property.

10.    The modification or amendment of escrow agreements established for repairs to the mortgaged property or reserves for replacement of personal property.

The undersigned gives said Attorney-in-Fact full power and authority to execute such instruments and to do and perform all and every act and thing necessary and proper to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully as the undersigned might or could do, and hereby does ratify and confirm to all that said Attorney-in-Fact shall be effective as of **September 3, 2015.**

This appointment is to be construed and interpreted as a limited power of attorney. The enumeration of specific items, rights, acts or powers herein is not intended to, nor does it give rise to, and it is not to be construed as a general power of attorney.

Solely to the extent that the Servicer has the power to delegate its rights or obligations under the Agreement, the Servicer also has the power to delegate the authority given to it by Deutsche Bank National Trust Company, as Trustee, under this Limited Power of Attorney, for purposes of performing its obligations and duties by executing such additional powers of attorney in favor of

3

Exhibit C

DEED BOOK 26532 Pg 288

its attorneys-in-fact as are necessary for such purpose. The Servicer's attorneys-in-fact shall have no greater authority than that held by the Servicer.

Nothing contained herein shall: (i) limit in any manner any indemnification provided to the Trustee under the Agreement, (ii) limit in any manner the rights and protections afforded the re] Trustee under the Agreement, or (iii) be construed to grant the Servicer the power to initiate or defend any suit, litigation or proceeding in the name of Deutsche Bank National Trust Company except as specifically provided for herein. If the Servicer receives any notice of suit, litigation or proceeding in the name of Deutsche Bank National Trust Company, then the Servicer shall promptly forward a copy of same to the Trustee.

This limited power of attorney is not intended to extend the powers granted to the Servicer under the Agreement or to allow the Servicer to take any action with respect to Mortgages, Deeds of Trust or Mortgage Notes not authorized by the Agreement.

The Servicer hereby agrees to indemnify and hold the Trustee and its directors, officers, employees and agents harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever incurred by reason or result of or in connection with the exercise by the Servicer, or its attorneys-in-fact, of the powers granted to it hereunder. The foregoing indemnity shall survive the termination of this Limited Power of Attorney and the Agreement or the earlier resignation or removal of the Trustee under the Agreement.

This Limited Power of Attorney is entered into and shall be governed by the laws of the State of New York, without regard to conflicts of law principles of such state.

Third parties without actual notice may rely upon the exercise of the power granted under this Limited Power of Attorney; and may be satisfied that this Limited Power of Attorney shall continue in full force and effect and has not been revoked unless an instrument of revocation has been made in writing by the undersigned.

4

**Exhibit C**

DEED BOOK 26532 Pg 289

IN WITNESS WHEREOF, Deutsche Bank National Trust Company, as Trustee for the Trusts identified on Exhibit "A", has caused its corporate seal to be hereto affixed and these presents to be signed and acknowledged in its name and behalf by a duly elected and authorized signatory this **3rd day of September 2015.**

Deutsche Bank National Trust Company, as Trustee for the Trusts Identified on Exhibit "A"

By:_____

Name: Ronald Reyes
Title: Vice President

Witness:_____
        Jenny Piland

Witness:_____
        Richard Vieta

Prepared by:
Name:       Tim Avakian
Title:      Trust Administrator
Address:    Deutsche Bank National Trust Company
            1761 E. Saint Andrew Place
            Santa Ana, CA 92705

5

**Exhibit C**

DEED BOOK 26532 Pg 290

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF ORANGE

On **September  3, 2015** before me, **Jerome Jackson**, a Notary Public, personally appeared **Ronaldo Reyes**, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed that same in **his** authorized capacity, and that by **his** signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

        WITNESS my hand and official seal.
           (SEAL)

                                        Signature of Notary Public

JEROME JACKSON
Commission # 2011614
Notary Public - California
Orange County
My Comm. Expires Mar 14, 2017

6

**Exhibit C**

DEED BOOK 26532 Pg 291

**Exhibit A**

**Trust**
Saxon Asset Securities Trust 2006-2, Mortgage Loan Asset Backed Certificates, Series 2006-2
**Agreement**
Pooling and Servicing Agreement Dated as of May 1, 2006 among Saxon Asset Securities
Company, as Depositor, Saxon Mortgage, Inc., as Master Servicer, Saxon Mortgage Services,
Inc., as Servicer, and Deutsche Bank National Trust Company, as Trustee for Saxon Asset
Securities Trust 2006-2, Mortgage Loan Asset Backed Certificates, Series 2006-2.

**Trust**
Saxon Asset Securities Trust 2007-1, Mortgage Loan Asset Backed Certificates, Series 2007-1
**Agreement**
Pooling and Servicing Agreement Dated as of February 1, 2007 among Saxon Asset Securities
Company, as Depositor, Saxon Mortgage, Inc., as Master Servicer, Saxon Mortgage Services,
Inc., as Servicer, and Deutsche Bank National Trust Company, as Trustee for Saxon Asset
Securities Trust 2007-1, Mortgage Loan Asset Backed Certificates, Series 2007-1.

**Trust**
Saxon Asset Securities Trust 2007-2, Mortgage Loan Asset Backed Certificates, Series
2007-2
**Agreement**
Pooling and Servicing Agreement Dated as of April 1, 2007 among Saxon Asset Securities
Company, as Depositor, Saxon Mortgage, Inc., as Master Servicer, and Saxon Services, Inc., as
Servicer, and Deutsche Bank National Trust Company as Trustee for Saxon Asset Securities
Trust 2007-2, Mortgage Loan Asset Backed Certificates, Series 2007-2.

**Trust**
Saxon Asset Securities Trust 2007-3, Mortgage Loan Asset Backed Certificates, Series
2007-3
**Agreement**
Pooling and Servicing Agreement Dated as of July 1, 2007 among Saxon Asset Securities
Company, as Depositor, Saxon Mortgage, Inc., as Master Servicer, and Saxon Services, Inc., as
Servicer, and Deutsche Bank National Trust Company as Trustee for Saxon Asset Securities
Trust 2007-3, Mortgage Loan Asset Backed Certificates, Series 2007-3.

7